**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

JAN 13 2025 1: 11 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OHIO CINCINNATI

1: 25 CV 012

J. McFARLAND
M.J. BOWMAN

| | |
|---|---|
| **MICHAEL SCHWARTZ**, *an individual,* | |
| Plaintiff, | **INJUNCTIVE RELIEF REQUESTED** |
| v. | **DEMAND FOR A JURY TRIAL** |
| **AR Bhalli LLC**, *a California Corporation,* | |
| **Atif Bhalli**, *an individual,* | |
| And | |
| **Does 1-10**, | |
| Defendants | |

## COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER EQUITABLE RELIEF

### INTRODUCTION

1.     Plaintiff Michael Schwartz ("Plaintiff") brings this action against Defendants AR Bhalli LLC, Atif Bhalli, and Does 1-10. Plaintiff alleges as follows upon personal knowledge, experience, investigation, and, as to all other matters, upon information and belief.

2.      This is an action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Ohio Telephone Solicitation Sales Act (Ohio Revised Code 4719; "TSSA"), and the Ohio Consumer Sales Practices Act (Ohio Revised Code 1345; "CSPA").

3.      Defendant AR Bhalli LLC is a real estate firm that places calls throughout the United States, including Ohio[1].

4.      Defendant Atif Bhalli owns, operates, controls, and directs AR Bhalli LLC as a cover to conduct fraudulent and illegal activities; specifically, TCPA violations, deceptive business practices, and wire fraud. All these fraudulent and illegal activities cross state lines into this District.

5.      Does 1-10 are Defendants' co-conspirators who have used aliases such as "Zayn Hunt," "Kevin with your electric company," "Stanley with TXU Energy," "Jake Martin," "Steve Smith," and "Knot Pro Services," among others.

6.      Defendants conspired to commit the fraudulent and illegal activities described in this Complaint; thus, Defendants are jointly and severally liable.

7.      To conduct these fraudulent and illegal business activities,

---

[1] https://www.bizapedia.com/ca/ar-bhalli-llc.html

2

Defendants conduct an aggressive telemarketing campaign by placing multiple calls to American telecommunications subscribers, including those whose phone numbers are registered on the National Do Not Call Registry.

8.  Plaintiff's cellular telephone received multiple calls from Defendants or agents acting on Defendants' behalf; *Despite*, 1.) Plaintiff's cellular telephone number being registered on the National Do Not Call Registry; and 2.) failing to secure prior express written consent to call Plaintiff.

9.  By placing the telemarketing calls at issue in this Complaint, Defendant caused Plaintiff actual harm and cognizable legal injury. This includes invasion of privacy, annoyance, nuisance and disruption of Plaintiff's daily life.

10.  Through this action, Plaintiff seeks an injunction and statutory damages as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of the Defendants.

## PARTIES

11.  Plaintiff is a natural person who, at all times relevant to this action, was a resident of Hamilton County, Ohio.

12.  Defendant, AR Bhalli LLC, is a California Corporation with its principal place of business located at 741 Irolo St. Apt. 422 in Los Angeles, California 90005. AR Bhalli LLC directs illegal and fraudulent business activities

3

throughout the United States, including Ohio, and this District. AR Bhalli's registered agent for service of process is Atif Bhalli. Atif Bhalli can be located at 741 Irolo St. Apt. 422 Los Angeles, California 90005.

13.     Defendant Atif Rafique Bhalli owns, operates, directs, and controls AR Bhalli LLC. Atif R. Bhalli can be located at 741 Irolo St. Apt. 422 Los Angeles, California.

14.     Does 1-10 are Defendants' co-conspirators who have used aliases such as "Zayn Hunt," "Kevin with your electric company," "Stanley with TXU Energy," and "Knot Pro Services," among others.

## JURISDICTION AND VENUE

15.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq. Mims v. Arrow Fin. Servs., LLC, 556 U.S. 368, 372 (2012).*

16.     Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2) as the tortious or illegal telephone calls complained of herein were receive in this judicial district.

## LEGAL AUTHORITIES

### The Telephone Consumer Protection Act of 1991

17.     The TCPA was passed into law in 1991. The TCPA regulates and

4

restricts the use of automatic telephone equipment. Congress enacted the TCPA to regulate the rapid growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing...can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using a prerecorded message or an automatic telephone dialing system ("ATDS"); (3) without the recipient's prior express consent, unless the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). If the court finds that Defendant(s) willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A), then the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the $500 in damages per violation. See 47 U.S.C. § 227(b)(3).

20.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.,* 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd,* 755 F.3d 1265 (11th Cir. 2014).

5

21.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

22.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

23.     The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous *written* disclosure must be provided to the individual. *See 2012 FCC Order, 27 FCC Rcd. at 1839* ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls ... ").

24.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone*

6

*Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

25.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

26.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'*clear and conspicuous disclosure*' of the consequences of providing the requested consent....and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

27.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, *a court must evaluate the ultimate purpose of the*

communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28.     "Neither the TCPA nor its implementing regulations *'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

29.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 *FCC Rcd.* 14014, ¶¶ 139-142 (2003). This is true whether consumers are encouraged to rent, purchase or consume goods at the time the call is received or in the future.

30.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd.* 14014, ¶ 136 (2003).

31.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd.* 7961, 7991-92 (2015) (requiring express consent "for

8

non-telemarketing and non-advertising calls").

32.     As recently held by the United States Court of Appeals for the Ninth

Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature,

invade the privacy and disturb the solitude of their recipients. A plaintiff alleging

a violation under the TCPA 'need not allege any additional harm beyond the one

Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980,

2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v.

Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

33.     Similarly, the United States Court of Appeals for the Second Circuit

held that the receipt of a telemarketing or unsolicited call "demonstrates more

than a bare violation and satisfies the concrete-injury requirement for standing."

*Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133- cv, 16-1425-cv, 2017 U.S.

App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl

Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-

in-fact necessary for standing need not be large; an identifiable trifle will

suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015)

(holding that receipt of two brief unsolicited robocalls as voicemail messages was

sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v.

John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that

injury under similar TCPA provision may be shown by one-minute occupation

fax machine).

## Ohio Revised Code

34.     The Ohio Revised Code (ORC) § 4719 et seq. regulates soliciting via telephone to residents of Ohio.

35.     ORC § 4719.01 defines a "purchaser" as "a person that is solicited to become or does become financially obligated as a result of a telephone solicitation."

36.     ORC § 4719.01 defines "telephone solicitation" as a communication to a person that: (a) "is initiated by or on behalf of a telephone solicitor or salesperson" or (b) the "communication either represents a price or the quality or availability of goods or services[.]"

37.     ORC § 4719.01 defines "telephone solicitor" as "a person that engages in telephone solicitation directly or through one or more salespersons," regardless of the solicitor's location, to persons in Ohio. "Telephone solicitor includes, but is not limited to, any such person that is an owner, operator, officer, or director of, partner in, or other individual engaged in the management activities of, a business."

38.     ORC § 4719.01 defines "purchaser" as "a person that is solicited to become or does become financially obligated as a result of a telephone solicitation."

39.    ORC § 4719.01 lists specific exemptions regarding which industries and individual companies do not have to register as a telephone solicitor with the Ohio Attorney General's Office. Specifically, ORC § 4719.01(B)(20) states, "a licensed real estate salesperson or broker under Chapter 4735. of the Revised Code *when soliciting within the scope of the person's license*" (Emphasis added).

40.    ORC § 4719.02(A) requires telephone solicitors to obtain a registration certificate from the Ohio Attorney General and to obtain a surety bond to solicit Ohio residents by telephone. A copy of the surety bond must be on file with the Ohio Attorney General.

41.    ORC § 4719.02(D) states that "[n]o nonresident telephone solicitor shall fail to maintain a resident of this state as its statutory agent for service of process.

42.    ORC § 4719.06 requires telephone solicitors within the first sixty (60) seconds of a call to state that the purpose of a call is to effect a sale and to identify the goods and services being sold.

43.    ORC § 4719.14 states that "[a] violation of section 4719.02, 4719.05, or 4719.06; division (C), (D), or (E) of section4719.07; section 4719.08, or division (A) of 4719.09 of the Revised Code is an unfair or deceptive act or practice in violation of section 1345.02 of the Revised Code."

44.    ORC § 1345.02(A) states that "no supplier shall commit an unfair or

deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction."

45.     ORC § 1345.02(B)(9) states that "[w]ithout limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive...(9) [t]hat the supplier has a sponsorship, approval, or affiliation that the supplier does not have."

46.     ORC § 1345.02(G) states that "[w]ithout limiting the scope of division (A) of this section, the failure of a supplier to obtain or maintain any registration, license, bond, or insurance required by state law or local ordinance for the supplier to engage in the supplier's trade or profession is an unfair or deceptive act or practice."

47.     ORC § 1345.01(C) defines a "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions[.]"

48.     ORC § 1345.09(A) states that people may bring an individual action against entities who commit violations of ORC § 1345.02 in order to recover actual economic damages plus an amount not exceeding five thousand (5000) dollars in noneconomic damages.

49.     ORC § 4719.15(A) states that "[a] purchaser injured by a violation of

a provision of sections 4719.01 to 4719.18 of the Revised Code or a rule adopted under any provision of those sections may bring a civil action against the telephone solicitor or salesperson who committed the violation."

50.     ORC § 4719.15(C) states that "[t]he court may award the purchaser punitive or exemplary damages upon the purchaser's showing that the telephone solicitor or salesperson knowingly committed an act or practice that violated a provision of sections 4719.01 to 4719.18 of the Revised Code."

51.     ORC § 1345.03(A) states that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

52.     ORC § 1345.03(B)(3) states that "In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration: ...(3) [w]hether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction[.]"

## VEIL PIERCING

53.     The alter ego analysis is in fact the same under state or federal law because "[v]eil piercing is not dependent on the nature of the liability. Under both state and federal common law, abuse of the

13

corporate form will allow courts to employ the tool of equity known as veil-piercing." *18 Francis C. Amendola et aI., C.J.S. Corporations § 14 (2010)."*

54.  In *Alman,* the First Circuit said: "The general rule adopted in the federal cases is that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity,'" *Alman v. Danin,* 801 F.2d 1,4 (1st Cir. 1986) [citing to *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C.Cir.1974).] In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form [citations omitted], an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine...."[emphasis added].

55.  As Judge Sanborn stated, "If any general rule can be laid down in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears,; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." *United States v. Milwaukee Refrigerator Transit Co.,* 142 F. 247, 255 (E.D. Wis. 1905).

14

56.     One or more Defendants used AR Bhalli LLC to perpetuate fraud upon Plaintiff; thus, veil piercing is appropriate in the current case.

## FACTUAL BACKGROUND

57.     At all times relevant, Plaintiff was a citizen of the State of Ohio.

58.      AR Bhalli LLC is a real estate company headquartered in California.

59.     Plaintiff alleges Atif Bhalli uses AR Bhalli LLC as an entity through which he and co-conspirators conduct fraudulent and illegal business activities; specifically, deceptive business practices and possibly, mail and wire fraud.

60.     Upon information, experience, investigation, and belief, Defendants AR Bhalli LLC and Atif Bhalli are directly involved with and responsible for the implementation of one or more tortious telemarketing campaigns that have caused Plaintiff harm.

61.     On or about January 25, 2023, one or more Defendants began placing or caused others to place unsolicited telemarketing calls to Plaintiff's cellular telephone number ending in 6805 ("the 6805 Number"), despite the 6805 Number being listed on the National Do Not Call Registry ("DNC").

62.     The calls were placed through the use of an automated system for the selection or dialing of telephone numbers, which, after Plaintiff answered the call, included the sound of a phone ringing followed by a prerecorded message,

indicating the call was placed using an ATDS.

63.     Between the time period of January 25, 2023, and November 15, 2023, Plaintiff received twenty-one (21) individual telemarketing calls from one or more Defendants, all through the use of an automated system for the selection or dialing of telephone numbers. An additional call was received on or about July 16, 2024.

64.     On or about January 25, 2023, after answering a call from the phone number 817-792-4235 and then hearing a prerecorded message claiming to be from "[Plaintiff's] utility company," The prerecorded message did not include an option for opting out of future calls, in violation of the Telemarketing Sales Rule[2]. Plaintiff was transferred to and spoke with a Defendant, or an agent of one or more Defendants, who identified himself as Lionel Parker[3]. Mr. Parker told Plaintiff he was a "stupid customer." Mr. Parker told Plaintiff that the call was being recorded and monitored by the "Public Service Commission of Texas." Plaintiff informed Mr. Parker that Plaintiff understood and said, "this call is being recorded." Mr. Parker asked for Plaintiff's driver's license number and social security number. Plaintiff told Mr. Parker that he would not provide Plaintiff's driver's license number or social security number. Plaintiff told Mr.

---

[2] https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule
[3] Unless otherwise proven, Plaintiff asks the Court to assume that the names provided by a Defendant, or an agent of Defendant, are pseudonyms used to masks the true identity of one or more Defendants and/or their agents.

16

Parker to place Plaintiff's phone number on his company's internal do not call list. Mr. Parker asked Plaintiff why Plaintiff wasted Mr. Parker's time. Plaintiff reminded Mr. Parker that it was Mr. Parker's company that called Plaintiff and asked Mr. Parker who was wasting whose time. Mr. Parker told Plaintiff that if Plaintiff did not provide Mr. Parker with Plaintiff's driver's license number, then Mr. Parker would file a complaint against Plaintiff. Mr. Parker said it was the law, and that Mr. Parker would "take action" against Plaintiff. Plaintiff reminded Mr. Parker that the call was being recorded. Mr. Parker proceeded to repeatedly say "fuck you" to Plaintiff and then disconnected the call.

65.     On or about February 3, 2023, Plaintiff answered the phone and heard a prerecorded message from "[Plaintiff's] utility company" and was transferred to a Defendant or an agent of Defendant who did not identify himself. The prerecorded message did not include an option for opting out of future calls, in violation of the Telemarketing Sales Rule[4]. The Defendant or agent of Defendant that Plaintiff was transferred to told Plaintiff that Plaintiff needed to die. Plaintiff asked the Defendant or agent of Defendant what the Defendant or agent of Defendant was saying. The Defendant or agent of Defendant repeated, "you need to die" and disconnected the call. The person who delivered the threatening messages to Plaintiff did not state his name. While the prerecorded

---

[4] None of the calls with prerecorded messages in this matter contained an option for opting out of future calls.

message contained a solicitation, no solicitation was made by the live caller who delivered a threat to Plaintiff.

66.     Plaintiff received a third call on or about February 3, 2023, that began with a prerecorded message from "[Plaintiff's] electric company" but the system could not transfer Plaintiff to a live agent. Between February 12, 2023, and March 4, 2023, Plaintiff received fourteen (14) additional calls from "[Plaintiff's] utility company" or "[Plaintiff's] electric company." An additional call was received on or about August 31, 2023 from the phone number 817-672-2264. During all these calls, the automated system did not provide an option for Plaintiff to opt out of future calls nor did the automated system connect Plaintiff to a live human such that Plaintiff could tell a human being to place Plaintiff's phone number on an internal do not call list[5].

67.     On or about October 26, 2023, Plaintiff received a phone call from 817-675-1449. Answering the phone, Plaintiff was connected to Stanley with "your electric company" calling about "senior citizen discounts." Plaintiff began the call by saying "Call's recorded. Hello." Plaintiff recorded the phone call. Stanley transferred Plaintiff to a senior supervisor, Finn Martin. Plaintiff told Mr. Martin "Calls are recorded." Stanley said the call was being recorded by the

---

[5] It is a violation of 16 CFR Part 310.4(b)(1)(b)(ii) to not provide called parties with an automated option for opting out of receiving future calls.

18

government. Plaintiff again informed Mr. Martin that the phone call was being recorded. Mr. Martin provided a call back phone number of 325-726-2644[6] to Plaintiff. Mr. Martin attempted to get Plaintiff to authorize Mr. Martin's company to charge an electronic check for $134.22; however, Plaintiff told Mr. Martin that Plaintiff wanted to mail the check in and asked that Mr. Martin provide Plaintiff with an address. Mr. Martin said to make the check out to AR Bhali[7] and to send the check to 741 Irolo St #422 Los Angeles, CA 90005. Mr. Martin stated that AR Bhali was a government program that would pay Plaintiff's utility bill if Plaintiff sent AR Bhali money.

68.     On or about October 30, 2023, Plaintiff received a phone call from 817-672-7259. Answering the phone, Plaintiff was transferred to "Stanley from TXU Energy" calling about senior citizen discounts to customers. Plaintiff began the call by saying, "Call's recorded. Hello." Plaintiff recorded the call. Stanley transferred Plaintiff to a senior supervisor, Zayn Hunt. Plaintiff told Zayn Hunt that the call was being recorded. Zayn told Plaintiff that the program is AR Bhalli Services. Zayn provided Plaintiff with a call back number of 325-726-2644, which matches the same phone number provided during the call on October 26, 2023.

---

[6] Plaintiff attempted to contact someone at the phone number ending in 2644 in order to discover who may be responsible for the unsolicited calls to Plaintiff's phone; however, the phone number does not appear to be operation..

[7] Mr. Martin spelled AR Bhalli with one "L;" however, according to the California Secretary of State's office, AR Bhalli LLC is registered at the address Mr. Martin provided to Plaintiff. Plaintiff believes the Court and a jury will find the distinction to be trivial and have no impact on the matter.

69.     On or about November 15, 2023, Plaintiff received a phone call from 817-672-6004. Answering the phone, Plaintiff was transferred to "Kevin with your electric company" calling about senior citizen discounts to customers. Plaintiff did not start recording the call until speaking with Zayn Hunt, a supervisor. Zayn Hunt was also the name of the supervisor Plaintiff spoke with on October 30, 2023. Mr. Hunt told Plaintiff that the call was being recorded. Plaintiff informed Mr. Hunt that "This call is being recorded." Mr. Hunt provided Plaintiff with a callback number of 325-726-2644, which is the same phone number as the calls on October 26 and October 30, 2023. Mr. Hunt told Plaintiff to pay Knot Pro Services $110. Mr. Hunt said Knot Pro Services would pay Plaintiff's utility bill. Mr. Hunt told Plaintiff that Knot Pro Services is a government program.

70.     On or about July 16, 2024, Plaintiff received an additional phone call. The call began with a prerecorded message about a promotion "[Plaintiff's] electric account" might be eligible for. The autodialer system transferred Plaintiff to a woman who did not identify herself. Plaintiff told the woman that the call was being recorded. Plaintiff recorded the call. The woman told Plaintiff that her company was recording the call.

71.     Between December 18, 2024, and January 3, 2025, Plaintiff received five (5) phone calls from 641-937-6234. During the phone call on or about

December 28, 2024, Plaintiff answered the phone and someone who did not identify himself stated that he was calling Plaintiff about promotional rates on Plaintiff's utility bill. The person transferred Plaintiff to a supervisor, William Smith. William Smith was unable to get Plaintiff to provide payment information and eventually transferred Plaintiff to a senior supervisor, Steve Smith. Steve Smith disconnected the phone call after Steve Smith was unable to extract payment information from Plaintiff.

72.     To transmit the above telephonic calls, Defendants used equipment, or paid a third party to use equipment, which has the capacity to generate random telephone numbers using a random or sequential number generator, and dial such numbers, *en masse* - without any human intervention, and in fact, Defendant and/or Defendant's agent used such equipment to dial Plaintiff's cellular telephone number.

73.     The telephone calls began with the sound of an artificial or prerecorded message before a live caller came on the line, further indicating the use of an ATDS.

74.     Plaintiff never provided one or more Defendants with any form of consent, including express written consent that authorized one or more Defendants to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or

dialing of telephone numbers.

75.    Plaintiff is not and has never been a customer or client of AR Bhalli LLC or Atif Bhalli. No prior business relationship exists.

76.    The telemarketing calls at issue in this action originated from multiple long code and/or spoofed numbers, including: 1.) 817-672-2264, 2.) 817-675-1449, 3.) 817-672-6004, 4.) 817-672–7259, and 5) 641-937-6234.

77.    Upon information and belief, the long code numbers cited in ¶ 76 of this Complaint are owned, maintained, and/or operated by Defendant or Defendants' agent.

78.    Plaintiff is the subscriber and regular user of the 6805 Number and is financially responsible for telephone service to the 6805 Number.

79.    The 6805 Number is for personal use and is not associated with a business.

80.    Plaintiff has never done business with one or more Defendants or Defendants' agents, has never inquired about their products and never provided prior express written consent to one or more Defendants or Defendants' agents to place autodialed calls or text messages to solicit their products.

81.    Upon information and belief, Defendants and their agents lack a

sufficiently adequate system for limiting autodialed and/or prerecorded calls to cellular phones on the DNC for which it does not have prior express permission to call.

82.     Defendant's calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services. Specifically, Plaintiff was repeatedly told to pay AR Bhalli LLC for a service; that is, one or more Defendants and/or their agents told Plaintiff that if Plaintiff provided a one-time payment to AR Bhalli LLC then AR Bhalli LLC would pay Plaintiff's utility bill for six (6) months.

83.     Upon information and belief, Defendant fails to maintain a list of persons who request not to receive telephonic sales calls.

84.     The generic and repetitive nature of Defendant's prerecorded telemarketing calls, combined with the large number of calls, the random nature of the calls, the lack of an immediate connection when the calls were answered, an audible pause and sound when the calls were answered and the use of multiple long code numbers and/or spoofed numbers in making the calls demonstrates that Defendant utilized an automated system for the selection or dialing of Plaintiff's telephone number.

85.     Defendant's unsolicited calls caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and

conversion. The calls also caused inconvenience and disruption to Plaintiff's daily activities and the peaceful enjoyment of Plaintiff's personal and professional life, including the ability to use Plaintiff's cellular telephone.

86. Defendant hounded Plaintiff with persistent calls. Plaintiff was at home when many of the calls were received, which resulted in an audible sound, *e.g.*, the constant ringing of Plaintiff's cellular telephone, which caused a disturbance of the domestic peace of Plaintiff's home and invaded Plaintiff's privacy.

87. Plaintiff's 6805 number was placed on the DNC by Plaintiff on May 24, 2021. Defendant's calls were placed to Plaintiff's 6805 over one (1) year after DNC registration, which exceeds the thirty (30) day period for business entities to stop calling phone numbers on the DNC.

88. The federal "general rule" of veil piercing applies in this case because Defendant Atif Bhalli used Defendant AR Bhalli LLC to promote and perpetuate egregious fraud; specifically, the corporate entity was used as a legal entity to accept payments in furtherance of a scheme that defrauds individuals. AR Bhalli LLC is not a utility provider and does not have the authority to offer utility services discounts on behalf of utility providers. Defendant Atif Bhalli, as the owner, operator, and director of AR Bhalli LLC, and his unnamed co-conspirators are thus liable for the harm caused by their actions.

## CAUSES OF ACTION

### First Cause of Action
### Negligent Violations of the TCPA, "ATDS"
### Prohibition, 47 U.S.C. § 227(b) et seq.

89.     Plaintiff repeats and incorporates by reference ¶ ¶ 1–88.

90.     Defendants– or third parties directed by Defendants – transmitted calls using an automatic telephone dialing system and/or a prerecorded message to the cellular telephone number of Plaintiff.

91.     These communications were made without regard to whether Defendants had first obtained express permission from Plaintiff to make such calls.

92.     Defendants did not have prior express consent to call or text the cellular telephone of Plaintiff when the communications were made.

93.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phone of Plaintiff without prior express consent. Further, the calls began with an artificial or prerecorded voice message.

94.     Defendants knew that it did not have prior express consent to place these communications and knew, or should have known, that it was using an ATDS to make non-emergency telephone calls to the cell phone of Plaintiff

without prior express consent. The violations were therefore willful or knowing.

95.    Defendants' communications caused Plaintiff actual harm including, but not limited to, invasion of personal privacy, aggravation, nuisance and disruption to Plaintiff's daily life, reduction in cellular telephone battery life, data loss and loss of use of Plaintiff's cellular telephone.

96.    As a result of the aforementioned violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each communication in negligent violation of the TCPA, or up to $1,500 in statutory damages for each communication in willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

97.    Additionally, Plaintiff is entitled to and seeks injunctive relief prohibiting such future conduct. *Id.*

## Second Cause of Action
### Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b) et seq.

87.    Plaintiff repeats and incorporates by reference ¶¶ 1–88.

88.    Defendants placed multiple calls to Plaintiff's cellular telephone within a twelve (12) month period beginning January 25, 2023. The calls were placed using an ATDS and many of the calls began with a prerecorded message in violation of 47 U.S.C. § (b)(1)(A)(iii).

89. Defendants knew or should have known that Plaintiff's cellular telephone was at all times relevant to this matter, listed on the National Do Not Call Registry. Further, Defendants knew, or should have known, that they did not have Plaintiff's express written consent to be contacted. The violations were therefore willful or knowing.

90. Defendants caused Plaintiff actual harm including, but not limited to, invasion of personal privacy, aggravation, nuisance and disruption to Plaintiff's daily life, reduction in cellular telephone battery life, data loss and loss of use of Plaintiff's cellular telephone.

91. Plaintiff explicitly told one or more Defendants, or their agent, to place Plaintiff's phone number on their internal do not call list. One or more Defendants, or their agent, placed an additional twenty-six (26) calls to Plaintiff's phone number; therefore, Defendants knowingly and willfully violated the TCPA.

92. As a result of the aforementioned violations of the TCPA, Plaintiff is entitled to an award of up to $1,500 in statutory damages for each call in willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

93. Additionally, Plaintiff is entitled to and seeks injunctive relief prohibiting such future conduct. *Id.*

## Third Cause of Action
### Unfair or Deceptive Act or Practice, Failure to Register as a Telephone Solicitor, ORC § 4719.02(A)

94.  Plaintiff repeats and incorporates by reference ¶¶1–88.

95.  According to the Ohio Attorney General's website, AR Bhalli LLC is not registered with the State of Ohio as a Telephone Solicitor.

96.  Defendants AR Bhalli LLC and Atif Bhalli were not soliciting Plaintiff as part of a real estate transaction and, thus, were not soliciting within the scope of a real estate license. Defendants are, therefore, not members of an exempt class, according to ORC § 4719.01(B)(20).

97.  Pursuant to ORC § 4719.14, Ohio's Consumer Sales Practices Act, ORC § 1345 et seq., applies.

98.  Pursuant to ORC § 1345.02(G), "[t]he failure of a supplier to obtain or maintain any registration...for the supplier to engage in the supplier's trade or profession is an unfair or deceptive act or practice."

## Fourth Cause of Action
### Unfair or Deceptive Act or Practice, Failure to Maintain an Ohio Resident as Statutory Agent for Service of Process, § ORC 4719.02(D)

98.  Plaintiff repeats and incorporates by reference ¶¶1–88.

99.  According to the Ohio Secretary of State's Office, AR Bhalli LLC does not have a statutory agent for service of process in the state of Ohio.

## Fifth Cause of Action
### Unfair or Deceptive Act or Practice, Failure to Disclose Required

28

## Information, ORC § 4719.06

100. Plaintiff repeats and incorporates by reference ¶ ¶ 1–88.

101. ORC § 4719.06 states that "[w]ithin the first sixty seconds of a telephone call...no telephone solicitor or salesperson shall fail to do all of the following: (1) state the solicitor's or salesperson's true name and the company on whose behalf the solicitation is being made; (2) state that the purpose of the telephone call is to effect a sale; (3) identify the goods or services being sold."

102. The information required to be disclosed in the first sixty seconds of the phone call was not disclosed by one or more Defendants in the required time period. Specifically, the name of the company was not disclosed; rather, one or more Defendants, or their agents, as well as the prerecorded messages, did not state the name of the company on whose behalf Plaintiff was being called. Rather, Plaintiff was told he was being contacted by his "utility provider." During several of the calls, one or more Defendants, or their agents, did not provide Plaintiff with the name of the Defendant or agent of Defendant with whom Plaintiff was speaking.

103. Pursuant to ORC § 4719.14, Ohio's Consumer Sales Practices Act, ORC § 1345, applies.

104. Pursuant to § ORC 1345.02(A), "[n]o supplier shall commit an unfair or

deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

## Sixth Cause of Action
### Unfair or Deceptive Act or Practice, Deceptive Statement, § ORC 1345.02(A)

105.    Plaintiff repeats and incorporates by reference ¶¶1–88.

106.    One or more Defendants stated to Plaintiff that they could see Plaintiff's current account with a utility provider. This is an impossible feat for the Defendants as one or more Defendants are not a utility provider, are not affiliated with a utility provider, and/or are not affiliated with Plaintiff's utility provider.

107.    Plaintiff did not have a prior business relationship with one or more Defendants and, specifically, not a relationship of utility provider to utility service customer.

108.    During the phone call that took place on or about October 26, 2023, a Defendant, or an agent of one or more Defendants, said AR Bhalli was a senior citizen program that would be paying my utility bill if Plaintiff sent AR Bhalli money. Further, Defendant or Defendant's agent stated that AR Bhalli Services is a "government program." Similarly, Plaintiff was told that "Knot Pro Services" is a government program. These are false or misleading statements and, thus, deceptive business practices.

30

### Seventh Cause of Action
### Unfair or Deceptive Act or Practice, Claiming an Affiliation, Sponsorship, or Approval that Supplier Does Not Have, ORC § 1345.02(B)(9)

109.   Plaintiff repeats and incorporates by reference ¶¶ 1–88.

110.   During the phone call that took place on or about October 26, 2023, a Defendant, or an agent of one or more Defendants, told Plaintiff that the call was being recorded by the government, thus indicating that one or more Defendants are affiliated with "the government." No named Defendant in this case is affiliated with any government. Furthermore, a Defendant, or an agent of Defendant, stated that AR Bhalli Services is a "government program," further misleading called parties into believing that one or more Defendants are working with a government body.

111.   During the phone call that took place on or about October 30, 2023, a Defendant, or an agent of one or more Defendants, said AR Bhalli Services is a government program, thus misleading called parties by stating that one or more Defendants have an affiliation with a government. One or more Defendants do not have an affiliation with a government.

112.   During the phone call that took place on or about October 30, 2023, a Defendant, or an agent of one or more Defendants, said Knot Pro Services is a government program, thus indicating an affiliation with a government. One or more Defendants do not have an affiliation with a government.

113.   Each of the twenty-seven (27) calls to Plaintiff's phone stated that Plaintiff was being called by his utility provider. Defendants are not a utility provider nor does one or more Defendants have an affiliation or sponsorship with a utility provider. Furthermore, Defendants do not have the approval of a utility provider.

## Eighth Cause of Action
## Prohibited Acts, ORC § 4719.08(I)

114.   Plaintiff repeats and incorporates by reference ¶¶ 1–88.

115.   Defendants placed, or authorized others to place, phone calls using number spoofing[8], a method of deception that intentionally blocks disclosure of a telephone number from which a telephone solicitation is made.

## Ninth Cause of Action
## Unfair or Deceptive Business Act or Practice, Unconscionable Act, ORC § 1345.03

116.   Plaintiff repeats and incorporates by reference ¶¶ 1–88.

117.   One or more Defendants engaged in unconscionably deceptive acts.

118.   One or more Defendants knew that Plaintiff would not receive a benefit from the transaction proffered by one or more Defendants.

119.   Defendants are not individually or collectively a utility provider, nor do

---

[8] https://www.fcc.gov/spoofing#:~:text=Spoofing%20is%20when%20a%20caller%20deliberately%20falsifies,which%20can%20be%20used%20in%20fraudulent%20activity.

any of the Defendants pay an individual's utility bill if same individual pays AR Bhalli LLC or its agents according to the claims made by one or more Defendants.

120. Defendants, individually or collectively, knew, or should have known, of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

121. Furthermore, Defendants called Plaintiff claiming to be offering senior citizens' discounts; thus, while Plaintiff is not a senior citizen, Defendants acted with the intent to target senior citizens.

122.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Michael Schwartz demands a jury trial on all claims so triable, and judgment against Defendant for the following:

a. Injunctive relief prohibiting violations of the TCPA and Ohio Revised Code by Defendants in the future;

b. Statutory damages of $500.00 for each and every communication made in negligent violation of the TCPA or $1,500 for each and every communication made in willful violation of the TCPA, pursuant to 47 U.S.C. § 227 (b)(3)(B) and statutory damages of $5,000 for each and every violation of the ORC, pursuant to ORC § 4719 and ORC § 1345 according to the following schedule:

Count 1: $1,500 x 27 = $40,500
or
Count 2: $1,500 x 27 = $40,500
and
Count 3: $5,000 x 27 = $135,000
Count 4: $5,000 x 27 = $135,000
Count 5: $5,000 x 27 = $135,000
Count 6: $5,000 x 27 = $135,000
Count 7: $5,000 x 27 = $135,000
Count 8: $5,000 x 27 = $135,000
Count 9: $5,000 x 27 = $135,000

Total: $985,500;

c.  Punitive and/or exemplary damages, pursuant to ORC § 4719.15(C), due to

the egregious fraud perpetuated by Defendants;

d.  Plaintiff's attorney fees and court costs, pursuant to ORC § 1345.09(F)(2);

e.  Pre- and post-judgment interest; and

f.  Such other relief as this Court deems just and proper.


## JURY DEMAND

123. Plaintiff hereby demands a trial by jury.


## DOCUMENT PRESERVATION DEMAND

124. Plaintiff demands that Defendant(s) take affirmative steps and

affirmative measures to retain, collect, and ensure that no

potentially relevant documents, records, or information

(including electronic information) are inadvertently altered,

34

lost, or destroyed. Plaintiff further demands that Defendant(s)

shall preserve all records, lists, electronic databases or other

itemization of telephone numbers associated with Plaintiff and

the communication or transmittal of the calls as alleged herein.

Dated: January 13, 2025

Respectfully Submitted,

**MICHAEL SCHWARTZ**
*Pro se Plaintiff*
1400 Reading Road #1111
Cincinnati, Ohio 45202
Tel.: (817) 600-6805
Email: tcpacorrespondence@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of January, 2025, a true and correct copy of the foregoing document was sent electronically to process servers for delivery to Defendants.

By: _Michael Schwartz_
Michael Schwartz
Plaintiff Pro Se

## <u>SERVICE LIST</u>

### Michael Schwartz v. AR Bhalli LLC, Atif Bhalli, and Does 1-10

### United States District Court, Southern District of Ohio

AR Bhalli LLC
741 Irolo St. Apt. 422
Los Angeles, CA 90005

Atif Bhalli
741 Irolo St. Apt. 422
Los Angeles, CA 90005

*Service via Process Server*