**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SCHWARTZ, | Case No: 1:25-cv-12 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| AR BHALLI, LLC, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff is a frequent litigant in this Court. In addition to at least three cases in which Plaintiff has proceeded pro se, he currently is or has been represented by counsel in at least four additional Telephone Consumer Protection Act ("TCPA") cases.[1] Pursuant to local practice, the case has been referred to the undersigned for disposition of non-dispositive pretrial matters, and for a report and recommendation on any dispositive issues.

Currently pending is Plaintiff's motion for default judgment, in which he seeks entry of a monetary judgment against two Defendants in the amount of $ 985,500.00. For the reasons stated below, the undersigned recommends that Plaintiff's motion be GRANTED IN PART, and that a default judgment be entered against Defendant AR Bhalli, LLC and Defendant Atif Bhalli in the amount of $5,500.00.

---

[1] Including the above-captioned case, Plaintiff has filed at least seven TCPA cases under the name of Michael Schwartz or Michael R. Schwartz. *See, e.g.*, Nos. 1:22-cv-581-JPH-SKB (pro se), 1:23-cv-374-KLL (pro se), 1:23-cv-375-JPH-SKB (initiated pro se, subsequently retained counsel), 1:23-cv-443-JPH (purported class action by counsel), 1:23-cv-608-MWM-SKB (initiated pro se, subsequently retained counsel), 1:24-cv-405-MWM (purported class action by counsel).

### I. Background

On January 13, 2025, Plaintiff paid the requisite filing fee and initiated the above-captioned pro se case under the TCPA and related Ohio laws against Defendants AR Bhalli LLC, Atif Bhalli, and John Does 1-10. (Doc. 1.) At Plaintiff's request, the Clerk of Court issued summons forms to Plaintiff for service of both the individual and corporate Defendants at the same California address: 741 Irolo St., Apt. #422, Los Angeles, CA. (Doc. 5.) Plaintiff has never identified or served any of the "John Doe" Defendants.

On February 26, 2025, Plaintiff requested the entry of default against AR Bhalli LLC and Atif Bhalli. (Doc. 6.) According to Plaintiff, both Defendants were properly served by a process server at the referenced residential Los Angeles address. The affidavit of the process server indicates that service was made on an adult female resident, age 30, identified as "Sheeza Rafigue." There is no indication of Ms. Rafigue's relationship either to Defendant Atif Bhalli or to the corporate Defendant, but the process server's affidavit recites that Ms. Rafigue was "[a]uthorized to [a]ccept [service]….at [her] usual place of residence or business." (*Id.*, PageID 52, 54.) On February 28, 2025, the Clerk filed an Entry of Default on the basis of Plaintiff's affidavit of valid service. (Docs. 6, 7.)

On April 23, 2025, Plaintiff moved for entry of default judgment, moving for leave to manually file an audio exhibit on the same day. (Docs. 8, 9.) On May 12, 2025, however, the record reflects that a copy of a notational order granting Plaintiff's motion for leave to manually file his audio exhibit mailed to Plaintiff at his address of record was returned to this Court as undeliverable. The notation on the envelope reflects that the U.S. Postal Service could not deliver the envelope "as addressed" and that it was "unable to forward." (Doc. 10.)

Based on the undersigned's examination of Plaintiff's address following the return of mail to this Court, the Court determined that the address listed of record by Plaintiff is not his physical residential or business address, but instead is that of a retail Staples store located in Cincinnati, Ohio where Plaintiff appears to have paid for a "virtual" mailbox. The same physical street address was provided on the summons forms that the process server served on Defendants AR Bhalli LLC and Atif Bhalli, instructing them that their answer to the complaint or Rule 12 motion must be served on Plaintiff at "1400 Reading Rd #1111, Cincinnati, OH 45202." (*See* Doc. 5.)

On July 28, 2025, the undersigned issued an Order to Show Cause to Plaintiff directing him to show cause:

a. why the entry of default against Defendants should not be set aside based on improper service; to wit, the failure of Plaintiff to list his correct address on the summons forms;

b. why this case should not be dismissed based on the failure of Plaintiff to timely serve any named Defendant within the time allotted under Rule 4(m), Fed. R. Civ. P.;

c. why this case should not be dismissed based on Plaintiff's failure to keep the Court apprised of his correct address.

(Doc. 11.) On August 8, 2025, Plaintiff filed a timely response to the "Show Cause" Order.

## II. Plaintiff has Adequately Responded to the Show Cause Order

In his response to the Show Cause Order, Plaintiff readily admits that the address he provided on the summons forms and for purposes of this litigation is that of a "virtual" or private mailbox. Plaintiff subscribes to his virtual mailbox through iPostal1, which in turn contracts with Staples as a third party that manages the physical space where iPostal mailboxes are located. Plaintiff states that he has subscribed to his virtual mailbox "for

3

some time" and that he continues to pay for the service and has not changed his physical address.

Plaintiff argues that his use of a virtual mailbox should have no impact on service on the Defendants or the entry of default. At this time, the Court agrees.

On May 16, 2023, Plaintiff authorized the U.S. Postal Service to deliver mail to him at the virtual mailbox by filing a PS Form 1583, Application of Mail Through Agent, with the United States Postal Service ("USPS"). Plaintiff's virtual or private mailbox is, for all intents and purposes, a valid physical location for the purpose of receipt of Plaintiff's mail. Plaintiff has no explanation for why one piece of mail sent to the identified virtual mailbox was returned to this Court as "undeliverable," but expresses his hope "that the undeliverable letter is an anomalous event that is not likely to repeat itself." (Doc. 12, PageID 111.)

As the Court stated in the Show Cause Order, Rule 4(a)(1)(C) requires a summons form to state the name and address "of the plaintiff." This Court also routinely requires pro se plaintiffs to keep the Court apprised of their current address. The Show Cause Order noted that Federal Rule of Civil Procedure 4(a)(1)(C) does not on its face permit the use of a private or virtual mailbox in lieu of a physical address. But neither does the rule expressly prohibit the use of a private or virtual mailbox. In other words, Rule 4(a)(1)(C) simply does not define what is meant by "address" – whether a physical residential or business address or merely a mailing address at which a plaintiff may receive mail.[2]

---

[2] Likewise, no controlling case law appears to specify whether a plaintiff must keep the Court apprised of his or her physical address, as opposed to his or her valid mailing address.

4

In light of the absence of clear and controlling case law on this issue, the Court accepts as satisfactory Plaintiff's response to the "Show Cause" Order. In general, "[t]echnical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir.1994). Not every violation of Rule 4(a)(1)(C) will prove prejudicial. The Court's Show Cause Order expressed concern about "the strong possibility of prejudice" to Defendants should default judgment be entered. But Plaintiff's response adequately explains that prejudice is unlikely because Plaintiff routinely receives mail at his virtual address and has filed the appropriate form with the USPS to receive mail there through an agent.[3] *Contrast Moses v. Amazon.com.dedc LLC*, No. 16-8675 (MAS) (DEA), 2019 WL 7293590, at *2 (D.N.J. Dec. 30, 2019) (holding that individual defendants should be dismissed without prejudice based in part on the pro se plaintiff's failure to provide any address at all in the section of the summons form that required his current address.)

Plaintiff's response to the Show Cause Order also addresses the Court's concerns about the validity of service on "Sheeza Rafigue." The process server's affidavit states that he served Ms. "Rafigue" at the apartment that Plaintiff has identified both as the corporate Defendant's place of business and as Mr. Bhalli's personal residence. But the affidavit provides little information to support a finding that the female who was served was a qualified individual of "suitable … discretion" who resides with Defendant Bhalli and/or was "an agent authorized by appointment or by law" to accept service on his

---

[3] A virtual mailbox is intended solely for the receipt of mail; it is not a residence or business where personal service on a party ordinarily can be made. Few states recognize substitute service upon an individual at a private mailbox or virtual office as effective. *See*, *e.g.*, Florida Statute § 48.031(6)(a). But even in those states, the statutory language narrowly proscribes the circumstances in which such service will prove valid. *See Everyday People NYC LLC v. Ali*, 23-CV-2436 (NGG) (CLP), 2024 WL 3912820, at *9 (E.D.N.Y., Aug. 23, 2024) (recommending denial of default judgment where plaintiff served defendant at private mailbox address without fully complying with requirements for substitute service).

behalf or on behalf of the corporate Defendant. *See* Rule 4(e)(2)(B) and (C), Fed. R. Civ. P.; *see also* Rule 4(h)(1) (authorizing service on a corporation in the manner prescribed for serving an individual, or by delivery of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law" subject to certain conditions.)

In his response to the Show Cause Order, Plaintiff explains that although the process server identifies the individual who was served as a Ms. "Rafigue," her surname is actually "Rafique" (spelled with a "q" and not a "g"). While not on the summons, the body of Plaintiff's complaint lists Defendant Bhalli's full name as "Atif Ratique Bhalli.," (Doc. 1, ¶4, PageID 4.) Therefore, Plaintiff asserts that that the co-occupant of the apartment who accepted service, Sheeza or Sheza Rafique, "shares a name with Atif Rafique Bhalli." (Doc. 12, PageID 108; *see also id*., PageID 116.) Plaintiff has proffered additional evidence that his process server, Direct Legal, attempted to personally serve the 25-year-old Defendant Atif Rafique Bhalli twice prior to performing substitute service upon Ms. Rafique, and also mailed copies of the summonses and complaint to the Irolo address. (Doc. 12, PageID 118, 119.)

Last, Plaintiff's response to the Show Cause Order addresses the Court's concern that the process server failed to specify whether Ms. Rafique was located at her "usual place of residence or business." *See Aviva Life and Annuity Company v. Houck*, No. 4:13–cv–00057–SMR–TJS, 2013 WL 12184295, at *1 (S.D. Iowa Sept. 6, 2013) (questioning process server's representation that he left summons and complaint with the defendant's "husband/resident"). Plaintiff admits to "administrative error" by his process server, and has submitted with his response to the Show Cause Order amended proofs of service to

clarify the circumstances of service and correct the error. (Doc. 12, PageID 108; *see also id*., PageID 122-123, 124-125, 127-130.)

### III. Analysis of Motion for Default Judgment

Based on Plaintiff's satisfaction of the Show Cause Order, the undersigned turns next to the merits of Plaintiff's motion for default judgment. Plaintiff's motion for default judgment should be granted in part, to the extent that Plaintiff's complaint alleges sufficient facts to justify a default judgment in the amount of $5,500.00 against the two Defendants who have been properly served in this case but failed to appear.

### A. Standard of Review

When a Court reviews a motion for default judgment, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Wood v. Bronzie*, No. 1:20-CV-231, 2020 WL 4015247, at *1 (S.D. Ohio July 16, 2020) (internal citations omitted). However, a party is not automatically entitled to default judgment when a Default is entered by the Clerk. "[W]hen considering a motion for default judgment, even though the well-pleaded factual allegations of the complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief." *Lucas v. Monitronics Int'l, Inc.*, No. 1:17-CV-374, 2020 WL 6440255, at *1 (S.D. Ohio Nov. 3, 2020).

### B. Facts Alleged in Complaint

Plaintiff resides in Hamilton County, Ohio. (Doc. 1, ¶¶ 11, 57.) His cellular telephone number has been listed on the national Do Not Call Registry since May 24, 2021. (*Id*. ¶ 87.) Defendant AR Bhalli LLC is a limited liability real estate company

7

headquartered in California, and it is owned by Defendant Atif Bhalli. (*Id*., ¶¶ 3, 12, 13, 58.) Defendant AR Bhalli LLC is a real estate company, and is not a utility provider. (*Id*. ¶¶ 58, 88.)

Plaintiff's complaint alleges that he received a total of 27 unwanted telemarketing calls between January 25, 2023 and January 3, 2025 from one or more Defendants. Most of those calls – a total of 21 - were received between January 25, 2023 and November 15, 2023. (*Id*., ¶ 63.) The calls generally claimed to be either from Plaintiff's "utility company," or Plaintiff's "electric company" and originated from multiple phone numbers. (*Id*., ¶¶ 64-66, 76.)

In addition to the calls received in 2023, Plaintiff alleges that he received one call on July 16, 2024 that began with a prerecorded message about a promotion that Plaintiff might be eligible regarding his "electric account." (*Id*., ¶¶ 63, 70.) Plaintiff received five more calls from the number 641-937-6234 between December 18, 2024 and January 3, 2025. During one of the calls from the 641 prefix number, Plaintiff spoke with an unidentified caller who stated he was calling about promotional rates on Plaintiff's utility bill, and who transferred Plaintiff to a supervisor identified as William Smith. (*Id*., ¶ 71.) When William Smith was unable to obtain payment information from Plaintiff, he transferred the call to a "senior supervisor, Steve Smith," who disconnected the call. (*Id*.)

On October 26, 2023, Plaintiff received a phone call from the number 817-675-1449. After a pre-recorded message, Plaintiff was connected with "Stanley" with "your electric company," who stated he was calling about "senior citizen discounts." (*Id*., ¶ 67.) During this call, Plaintiff was transferred to a person claiming to be "Finn Martin." (*Id*.) Mr. Martin provided a call back number of 325-726-2544, and instructed Plaintiff to mail a

8

check for $134.22 to AR Bhalli[4] and to send it to 741 Irolo St #422 Los Angeles, CA 90005. (*Id*.) Mr. Martin stated that AR Bhalli (a/k/a "AR Bhali") was a government program that would pay Plaintiff's utility bill. (*Id*.)

On October 30, 2023, Plaintiff received a phone call from 817-672-7259, and after a pre-recorded message, was connected with "Stanley from TXU Energy." (*Id*. ¶ 68.) During the call, Plaintiff was transferred to "Zayn Hunt," who informed Plaintiff that he was calling about a program called "AR Bhalli Services." (*Id*. ¶ 68.) Caller Hunt provided Plaintiff with a call back number of 325-726-2644, the same phone number provided during the October 26, 2023 call.

On November 15, 2023, Plaintiff received a phone call from 817-672-6004, and after a pre-recorded message, was connected with ""Kevin with your electric company." (*Id*. ¶ 69.) During the call, Plaintiff was once again transferred to Kevin's supervisor, "Zayn Hunt," who instructed Plaintiff to pay Knot Pro Services $110 in exchange for the payment of Plaintiff's utility bill. (*Id*. ¶ 69.) Caller Hunt represented that Knot Pro Services is a government program and provided Plaintiff with the same call back number as provided by the callers on October 26 and October 30, 2023.

For the calls on October 26, October 30, and November 15: all three calls claimed to be providing "senior citizen discounts," and all three calls gave the same call-back number of 325-726-2644. (*Id*. ¶¶ 67–69.) The number, 325-726-2644, is not in operation. (*Id*., PageID 19, n. 6.) Plaintiff alleges that "[u]pon information and belief" all 27 calls originated from numbers that are "owned, maintained, and/or operated by Defendant or

---

[4]The person identified as Finn Martin spelled the defendant's name as "Bhali" but it is actually spelled "Bhalli. The undersigned spells it correctly for consistency.

9

Defendants' agent." (Id., ¶77.) Notably, however, none of the other 24 calls shared the names of alleged callers, provided a call-back phone number, or mentioned AR Bhalli in any way. (*Id*. ¶¶ 61–66, 70–71.)

Plaintiff has never had a business relationship with Defendant AR Bhalli LLC, nor Defendant Atif Bhalli. (*Id*. ¶ 75.) Likewise, Plaintiff has never provided either named Defendant with consent to call Plaintiff's cell phone number. (*Id*. ¶ 74.) Plaintiff is the sole user of the 6805 cell phone number in question, and that number is not associated with any business. (*Id*. ¶¶ 78-79.) As previously stated, Plaintiff's cell phone number has remained on the national Do Not Call list since May 2021. (*Id*. ¶ 87.)

### C. Plaintiff is Entitled to Default Judgment for Three Calls

The facts as alleged are accepted as true for the purposes of considering Plaintiff's motion for default judgment. Still, the Court must determine whether the facts as pleaded are sufficient for Plaintiff to state and recover on the federal and state legal claims that he has alleged. Plaintiff includes a total of nine separate legal claims in his complaint: two claims under the federal Telephone Consumer Protection Act, and seven additional claims that rely on various provisions of Ohio law including but not limited to Ohio's Consumer Sales Practices Act. Each of the nine claims provides for statutory damages of a sum certain without proof of specific economic damages. Based on the nine separate violations for a total of 27 calls, Plaintiff seeks nearly a million dollars in monetary damages.

But Plaintiff is entitled to default judgment only against the two Defendants who were properly served, and only for claims for which he has stated a legal basis for relief. Upon close examination of the complaint, it appears that Plaintiff has sufficiently alleged

that three telephone calls originated from Defendants AR Bhalli LLC and/or Atif Bhalli or their agents: the calls made on October 26, October 30, and November 15 of 2023. (Doc. 1, ¶¶ 67–69.) In contrast, apart from broadly alleging that most calls included some type of generic similarity in subject matter via a reference to Plaintiff's "utility" or "electric" account, Plaintiff alleges no facts that connect any of the other 24 calls with either of the named defendants, which are presumed to relate to the unserved "John Doe" Defendants. (*Id.*, ¶¶ 61–66, 70–71.)

In support of judgment against the Bhalli Defendants for all 27 calls, Plaintiff asks this Court to make assumptions about agency and connections between the callers that are not supported by the facts alleged. For example, Plaintiff asks this Court "to assume that the names provided" on the calls "are pseudonyms used to mask[] the true identity of one or more Defendants and/or their agents." (*Id.*, n.3, PageID 16.) He further asks this Court to assume that all numbers from which the calls originated may be "spoofed numbers." (*Id.*, ¶¶76, 115.)

Such speculative "assumptions" do not provide a sufficient factual basis for imposing default judgment against AR Bhalli LLC and Atif Bhalli for the additional 24 calls absent facts that connect the additional calls and John Doe callers to those Defendants. In short, Plaintiff is entitled to default judgment only on the three phone calls as to which he has sufficiently alleged involvement by the defaulting Defendants. Plaintiff's remaining claims for 24 telephone calls should be summarily dismissed, and Plaintiff's motion for Default Judgment regarding those 24 calls should be DENIED. What follows is the Court's analysis of the three phone calls for which default judgment is recommended.

### D. The Calculation of Damages Under Federal and State Law

#### 1. Negligent Violations of the TCPA, "ATDS" Prohibition

The referenced calls began with pre-recorded messages, (*Id*. ¶ 62), suggesting that Defendants used an automated telephone dialing system, or some form of automated telephone equipment. Since there was no emergency, no prior business relationship, and no purpose of debt collection, these calls were made in violation of 47 U.S.C. § 227(b). Plaintiff is entitled to recover $500 for each violation under 47 U.S.C. § 227(b)(3)(B). With three violations on October 26, October 30, and November 15, Plaintiff is entitled to recover a total of $1,500.00 under Count 1 of his complaint

#### 2. Knowing and/or Willful Violations of the TCPA

Plaintiff has sufficiently alleged that it is more likely than not that Defendants used a random number generator when using automated telephone equipment to make calls. (*Id*., ¶ 72.) Plaintiff generally alleges that he told multiple callers to place him on an internal do not call list. But he does not allege that he made that request on any of three most relevant call dates (October 26 or 30, or November 15). (*Id*. ¶¶ 61-71.) Additionally, Plaintiff does not allege any facts that show Defendants *knew* that Plaintiff's number was on the national Do Not Call list. Therefore, Plaintiff has not alleged sufficient facts to recover on Count 2 of his complaint for knowing or willful violations of the TCPA.

#### 3. Plaintiff's Duplicative State Law Violations

Counts 3 through 9 set out seven separate violations of provisions of the Ohio Telephone Solicitation Sales Act ("TSSA")) and of the Ohio Consumer Sales Practices Act ("CSPA"). For example, in Count 3, Plaintiff alleges that Defendants were not soliciting within the scope of their presumed real estate license and therefore were required to

register in the State of Ohio as a telephone solicitor. (Doc. 1 ¶ 95.) The failure to register is allegedly "an unfair or deceptive act or practice" under Ohio R.C. § 1345.02(G). In Count 4, Plaintiff alleges that Defendant AR Bhalli LLC does not have a statutory agent for service of process within the State of Ohio. (Doc. 1, ¶ 99.) In Count 5, Plaintiff alleges that Defendants' failure to disclose required information, including the caller's "true name and the company on whose behalf the solicitation is being made" violated Ohio R.C. § 4719.14 and Ohio R.C. § 1345.02. In Count 6, Plaintiff alleges that the Defendants' statement that AR Bhalli was a senior citizen program that would be paying Plaintiff's utility bill was a false and misleading statements and/or deceptive business practice. Count 7 alleges that in the two calls made on October 26 and November 15, Defendants falsely claimed to be affiliated with a government program. (Doc. 1, ¶¶ 67, 69.) In Count 8, Plaintiff alleges that Defendants placed the phone calls using number "spoofing" whereby the calls appeared to originate from different numbers, with a call back number not in operation in an attempt to conceal the true number from which they were calling, in violation of Ohio R.C. § 4719.08(I). (*Id*., ¶115.) And in Count 9, Plaintiff alleges that Defendants engaged in "unconscionably deceptive acts" when they represented their association with a utility company.

For each of the seven asserted claims under state law, Plaintiff seeks $5,000.00 in damages for each call. (Doc. 1, PageID 33-34.)[5] Above, the undersigned has explained why Plaintiff may recover damages against the two named Defendants only for the three calls made on October 26, October 30, and November 15, 2023. Even considering just those three calls, however, Plaintiff seeks an additional $100,000.00 in monetary

---

[5]Plaintiff also seeks attorney's fees. Because he proceeds pro se, he is not entitled to such fees.

13

damages for his seven state law claims. In support of that extraordinarily high sum of monetary damages in this case, Plaintiff cites to Ohio R.C. § 1345.09(A), a provision of the CSPA that permits an Ohio consumer who has entered into a transaction as a result of deceptive practices to file suit to "rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." (Doc.1, ¶48.)

The referenced statutory provision does not permit Plaintiff the recovery that he seeks. Although a portion of § 1345.09(A) allows the recovery of monetary damages in lieu of rescission of a consumer transaction,[6] the provision that permits recovery of up to $5,000.00 in noneconomic damages comes into play only when a consumer first proves that he or she has suffered from economic damages. Even then, the recovery of such damages is discretionary. It does not support an automatic award of $5,000.00 as Plaintiff suggests, but is limited to an amount "not exceeding" $5,000.00. Because Plaintiff does not allege that he suffered any economic damages, he may not recover damages under Ohio R.C. § 1345.09(A).

Plaintiff's complaint does not identify a second statutory provision that permits him to recover monetary damages. So the Court could simply deny his request for monetary damages under state law. In the interest of justice, however, the undersigned recognizes that Plaintiff may recover statutory damages of $200.00 per violation under a different subsection of the same statute, Ohio R.C. § 1345.09(B). Unlike the provision of the SCPA erroneously cited by Plaintiff, § 1345.09(B) applies even when a consumer has no economic damages. This Court has previously permitted recovery of $200.00 for *each*

---

[6]Because Plaintiff never entered any transaction, the remedy of rescission does not apply.

14

statutory violation *if* the plaintiff can prove that each telephone call resulted in separate violations of Ohio law. *See Lucas v. Monitronics International, Inc.*, 2020 WL 6440255, at *2. On the one hand, it is not entirely clear that the Ohio legislature intended to permit multiplying the $200.00 damage figure for each telephone call in a case involving seven separate violations. But absent contrary authority, the undersigned will permit it.

Plaintiff has sufficiently alleged that Defendants made three telemarketing calls that violated state law. Therefore, for the six separately stated violations of state law in Count 3, 4, 5, 6, 8, and 9, Plaintiff is entitled to recover statutory damages totaling $3,600.00 (3 calls x 6 violations x $ 200.00). For the stated violation in Count 7 involving two of the same phone calls, Plaintiff may recover an additional $400.00 in statutory damages. Thus, Plaintiff may recover a total of $4,000.00 for all of the alleged violations of Ohio's TSSA and CSPA.

### IV. Conclusion and Recommendations

Plaintiff's responsive memorandum, (Doc. 12), sufficiently responds to the Court's prior Order to Show Cause. (Doc. 11.) Therefore, **IT IS RECOMMENDED THAT**:

1. Plaintiff's Motion for Default Judgment (Doc. 8) as to Counts 1 and Counts 3-9 should **GRANTED IN PART** for the telemarketing phone calls made by or on behalf of Defendants AR Bhalli LLC or Atif Bhalli on October 26, October 30, and November 15 of 2023, but otherwise should be **DENIED**;

2. Default Judgment in the amount of $5,500.00 should be entered in Plaintiff's favor against AR Bhalli LLC and Atif Bhalli, who are jointly and severally liable;

3. Following entry of default judgment, this case should be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHAEL SCHWARTZ,                                     Case No: 1:25-cv-12

        Plaintiff,                                          McFarland, J.
v.                                                          Bowman, M.J.

AR BHALLI, LLC, et al.,

        Defendants.

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).